FIELDER *v.* WARNER.

Opinion delivered March 10, 1906.

1. SPECIFIC PERFORMANCE—ORAL CONTRACT.—Specific performance of an oral contract for the sale of land will not be decreed unless it is proved by a decided preponderance of the evidence, not only that the contract was made, but what were its precise terms. (Page 160.)

2. SAME—WHEN DENIED.—Equity will not enforce specific performance of a contract to sell land if, on account of great lapse of time, it would be impossible to frame a decree that would protect defendant's rights; or if the preponderance of the evidence shows that the contract has been by mutual agreement rescinded. (Page 161.)

Appeal from Craighead Chancery Court, Western District; *Edward D. Robertson,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This is a suit to enforce the specific performance of an oral agreement to convey an interest in real estate.

Appellant alleges that in the year 1881 he entered into an agreement with appellee, whereby appellant undertook to clear 160 acres of land in north half of section 25, and put the same in cultivation. In consideration of the performance of the agreement by appellant, appellee agreed to convey to appellant one-half of the land cleared by him and an equal number of acres of timbered land in said half section. Appellant entered into possession under this contract, cleared 160 acres of said land, and put the same in cultivation, except about fifteen acres, which was wet and unfit for cultivation, and placed thereupon improvements of the aggregate value of $1,500.

Appellee answered, and denied the agreement set out in the complaint, alleged that he made no agreement in reference to the northeast quarter, section 25, but did agree to convey to appellant an undivided one-half interest of the northwest quarter of said section, provided appellant would place the whole of said 160 acres in cultivation. That during the time appellant was engaged in the performance of this contract he (appellant) was to pay one-half the taxes on the land. It is alleged in the answer that this agreement was afterwards rescinded by mutual consent, and it was thereafter agreed between appellant and appellee that appellee should cultivate the land on the shares and use one-third of the corn raised thereon for the purpose of keeping the place in repair.

*N. F. Lamb* and *J. F. Gautney,* for appellant.

In an action for specific performance the court will grant relief according to the circumstances of the case. 21 Ark. 110. Going into possession and making improvements upon the faith of the agreement is sufficient consideration upon which to base a claim for specific performance. 32 Ark. 97. Where either party has in good faith done anything in performance of his contract, and thereby placed himself in a situation such that refusal of the other party to perform would operate as a fraud for which the law affords no adequate remedy, equity will grant specific performance, or execute the contract as far as may be, and give compensatory judgment. 40 Ark. 382; 1 Ark. 391; 55 Ark. 587.

*Hawthorne & Hawthorne,* for appellee.

1. The evidence on the part of appellant is too indefinite to entitle him to a decree for specific performance.

2. After a lapse of twenty-one years, with no probability of appellant's complying with his part of the agreement, and no means of placing appellee *in statu quo,* the court could not decree a specific performance. 34 Ark. 663; 19 Ark. 51; 40 Ark. 382; 23 Ark. 421; 44 Ark. 334; 8 Wall. 557; 6 John. Chy. 222 and note; 54 Am. Dec. 492; 33 Am. Dec. 635; 2 Wheat. 336; 93 Pa. St. 443.

3. The proof discloses that the contract was rescinded, and that thereafter appellant continued to pay rent for the use of the land for a period of fifteen to seventeen years. His acts were inconsistent with his demand in this case, and he is estopped. 23 Ark. 653; 114 N. Y. 271; 21 Minn. 111; 57 Am. Dec. 668.

WOOD, J., (after stating the facts.) A court of equity can not make a contract for parties and then decree its specific performance, in order to carry out its notions of what the abstract justice and right of the case as disclosed by the proof demands. The court will only decree specific performance when the contract itself is clearly established by a preponderance of the evidence. We said in *Moore* v. *Gordon,* 44 Ark. 334, speaking of the contract: "Its terms must be definitely shown, * * * fairly made out, by decided preponderance, in a manner to be satisfactory to the chancellor, not only that the contract was made, but also as to the precise terms." The appellant testified concerning the terms of the contract as follows:

"About the 5th or 6th of January, 1881, near the gin lot of appellee, it was agreed between myself and appellee that I was to clear land, one-half for the other, and he put in a half section of which I was to clear 160 acres. He was to give me one-half of the cleared land, and as many more acres of timbered land. The reason I asked for one-half of the land in timber was because I would have to sell out unless I had timbered land to keep up the cleared part. I cleared on the half. He, Mr. Warner, said if I cleared 500 acres, he would deed me 500, and if I cleared 1000, he would give me 1000, and half I cleared."

A witness for appellant who heard the agreement between appellant and appellee testified:

"I heard Mr. Fielder propose to buy the tract from Mr. War-

ner. Warner replied: "Thad, you are not able to buy it. You need a home, and I would like for you to have it. Go over there, and clear the land deadening, and I will give you half you clear,' or a certain division of the land. I don't recollect now what that was, but he was to have timber in proportion to that piece of land. I think it was a half section. It was to be cleared across the east side of·it, and back as far as possible. As well as I remember, Fielder said: 'If I clear so much I will have no timber,' but I do not recollect that Warner said that he was to have half of the land that was not cleared. Mr. Fielder agreed to the proposal."

The appellee testified that he had the northwest quarter of 25 deadened, fenced, and 62 acres had been cultivated. He told appellant "to move in the houses, clear up the 160 acres under fence and they would farm in co-partnership," and added, "when we get this in cultivation, we will clear some more." The contract was not intended to cover the northeast quarter.

Who can tell from this evidence what the precise terms of the contract were which appellant is seeking to have performed? His own evidence leaves it uncertain whether he was to clear the land, and get half of what he cleared, or whether he was to clear the land and receive the same number of acres as he had cleared in consideration for the clearing, or whether he should receive half of what he.had cleared and an additional number of acres in the woods to make area equal to what he had cleared? Certainly, if appellant and his witnesses could not be definite and certain as to what the contract was, the court could not be. But even if there had been a contract definite in terms established, there are other insuperable barriers to the relief which appellant asks; namely, a preponderance of the evidence shows that, even if the contract were as appellant claims in his complaint and brief, still it would be impossible to frame a decree that would put appellee *in statu quo,* or approximate it. It would be impossible after this great lapse of time to have appellant comply with his part of the agreement, even as he contends it should be. Then, too, a finding that if there was an original agreement as set up in the complaint, such agreement had been, long years before rescinded would be sustained, we think, by the clear preponderance of the evidence.

So the decree of the chancellor was right, and it is affirmed.